STATE OF NORTH CAROLINA v. CRAIG RAYMOND KNOLL

STATE OF NORTH CAROLINA v. SAMSON WARREN, JR.

STATE OF NORTH CAROLINA v. BENNIE GARLAND HICKS

Nos. 119PA87, 120PA87, 121PA87

(Filed 30 June 1988)

1. **Arrest and Bail § 7— DWI—denial of access to counsel and friends—per se prejudice rule inapplicable**

   Application of a per se rule of prejudice because of a violation of defendant's statutory rights of access to counsel and friends is inappropriate in cases involving a violation of N.C.G.S. § 20-138.1(a)(2) (driving with an alcohol concentration of 0.10 or more). Rather, a defendant must make a showing that he was prejudiced in order to gain relief.

2. **Arrest and Bail § 7— DWI—failure to determine conditions of pretrial release —denial of access to counsel and friends—prejudice to defendants**

   The statutory rights of access to counsel and friends of three defendants charged with DWI were substantially violated by the magistrate's failure to inform each defendant of the circumstances under which he could secure his pretrial release as required by N.C.G.S. § 15A-511(b) and failure to determine conditions of pretrial release in accordance with N.C.G.S. §§ 15A-533(b) and -534(c), and the lost opportunity in each case to secure independent proof of sobriety by having friends and family observe the defendant and form opinions as to his sobriety, and the lost chance in one case to secure a second test for blood alcohol content, constituted prejudice to the defendants which required dismissal of the DWI charges against each of them.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of three unanimous decisions of the Court of Appeals reversing orders entered in the Superior Court, WAKE County, by *Farmer, J.,* on 19 February 1986 affirming the dismissal of driving while impaired charges by judges in the district court division in each of the cases and remanding each of the same for trial. *State v. Hicks,* 84 N.C. App. 237, 352 S.E. 2d 275 (1987); *State v. Knoll,* 84 N.C. App. 228, 352 S.E. 2d 463 (1987); *State v. Warren,* 84 N.C.

App. 235, 352 S.E. 2d 276 (1987). Heard in the Supreme Court 11 September 1987.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Linda Anne Morris, Associate Attorney General, for the State.*

*Crumpler & Scherer, by Sally H. Scherer and William B. Crumpler, for defendant-appellants.*

MEYER, Justice.

Defendant in each of these consolidated cases was charged with driving while impaired (DWI) in violation of N.C.G.S. § 20-138.1. Each defendant thereafter made a pretrial motion in Wake County District Court to dismiss the charge against him for violation of certain statutory and constitutional rights. The presiding judge in each case made findings of fact and conclusions of law and granted the motion to dismiss. The State appealed in all three cases to the Superior Court, Wake County, and because of the common questions of law involved, the State's appeals were consolidated for hearing.

At a hearing in Wake County Superior Court, Judge Robert L. Farmer adopted the findings and conclusions of the district court judges, made additional findings and conclusions, and affirmed the dismissals entered by the judges in the district court division. The State appealed, and the Court of Appeals reversed the judgments of the superior court and remanded all three cases for trial. We granted discretionary review in all three cases on 5 May 1987, and upon motion of the State (with consent of defendants), the cases were consolidated for briefing and oral argument. Concluding, as we do, that the Court of Appeals erred in reversing the judgments entered by the trial judge in each of the three cases, we reverse.

Before reviewing the three cases individually, we note, by way of background, the general obligations of the magistrate in such cases. Upon a defendant's arrest for DWI, the magistrate is obligated to inform him of the charges against him, of his right to communicate with counsel and friends, and of the general circumstances under which he may secure his release. N.C.G.S. § 15A-511(b) (1983). A defendant may be confined or otherwise

secured if he is so unruly as to disrupt and impede the proceedings, becomes unconscious, is grossly intoxicated, or is otherwise unable to understand the procedural rights afforded by the initial appearance before the magistrate. N.C.G.S. § 15A-511(a)(3) (1983).

The magistrate must also determine conditions for pretrial release of the defendant, N.C.G.S. § 15A-533(b) (1983), by adhering to one of the following courses: (1) release the defendant on his written promise to appear; (2) release the defendant upon his execution of an unsecured appearance bond; (3) place the defendant in the custody of a designated person or organization; or (4) require the execution of an appearance bond in a specified amount secured by a cash deposit of the full amount of the bond, by a mortgage, or by at least one solvent surety, N.C.G.S. § 15A-534(a) (1983). In determining the particular pretrial condition to impose, the magistrate must take into account the nature and circumstances of the offense charged, the weight of the evidence against the defendant, whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision, and any other evidence relevant to the issue of pretrial release. N.C.G.S. § 15A-534(c) (1983). We now proceed to review the three cases *seriatim*.

### KNOLL CASE

David Knoll was stopped by Officer T. C. Dunn of the Raleigh Police Department on South Saunders Street in Raleigh at 1:15 p.m. on 17 April 1984 and charged with driving while impaired. He was taken to the Wake County Courthouse, where he was administered an intoxilyzer test at 2:31 p.m. The results of the analysis showed defendant to have an alcohol concentration of 0.30. He was taken before a magistrate who set bond at $300.00. Between 4:00 p.m. and 5:00 p.m., Knoll asked several times to be allowed to telephone his father. He was allowed to make the call at about 5:00 p.m. Defendant's father stated that the magistrate informed him over the phone that his son could not be released until 11:00 p.m. and that, as a result, he did not go to the police station immediately but, rather, posted his son's $300.00 bail later that night at 11:00 p.m.

At a hearing on defendant's Motion to Dismiss, the trial judge made, inter alia, the following findings of fact:

4. After taking the intoxilyzer test, the defendant appeared with Officer Dunn before a magistrate who formally charged the defendant with driving while impaired. The magistrate asked the defendant no questions about his family ties, employment, financial resources, length of residence in the community, record of convictions, or any other matter relating to conditions that would affect a bond in his case. . . .

. . . .

6. When the defendant was placed in jail, he let the jailer know that he would like to call his father at 4:00 P.M. when he knew his father would be home. He reasonably believed that his father would be the best person to call to come get him and to make arrangements for his bond. He made several requests of the jail staff to be allowed to call his father before and around 4:00 P.M., but it was shortly after 5:00 P.M. before he was given an opportunity to make a phone call. He did call his father and inform him of his situation, including the amount of the bond.

7. . . . Mr. Knoll introduced himself to the magistrate on the phone and specifically identified himself as the defendant's father and stated that he wanted to come get his son. The magistrate responded that he could not come and get the defendant until 11:00 P.M. Mr. Knoll made it clear that he would like to get his son out right then, that he did not want him to have to stay in jail, and that he could come right away and post his bond. The magistrate responded, "The subject is not debatable." Therefore, Mr. Knoll waited until 11:00 P.M. to secure his son's release, and he posted a cash bond for him. . . . It appeared to Mr. Knoll when he talked with his son on the phone that his son was oriented and coherent and not noticeably impaired in either his manner of speech or in the substance of what he said. He detected nothing in talking with him on the phone that would indicate that the defendant would cause any problem if he were released immediately to Mr. Knoll's custody.

8. . . . [Mr. Knoll] was an appropriate person to take custody of his son when he talked with the magistrate at approximately 5:00 P.M., and it was not reasonable for the mag-

istrate to deny him any opportunity to secure his son's release forthwith. Because the magistrate made it clear to Mr. Knoll that he could not get his son out of jail before 11:00 P.M., Mr. Knoll reasonably assumed nothing else could be done at that time. He therefore made no further efforts to obtain his sons's [sic] release before 11:00 P.M.

### WARREN CASE

On Thursday, 29 March 1984, at 10:11 p.m., defendant Samson Warren, Jr., was operating his 1981 Ford truck on Dan Allen Drive near Yarboro Drive on or near the campus of North Carolina State University (NCSU). Officer Scaringelli of the NCSU Campus Police stopped the defendant and later charged him with DWI.

The defendant was taken to the Wake County Courthouse and was administered an intoxilyzer test at 11:08 p.m. The results of this test showed that defendant had an alcohol concentration of 0.25. The defendant was brought before a magistrate, and a secured bond of $500.00 was set.

A Dr. Martin, the head of the Computer Science Department at NCSU, and his son had arrived at the magistrate's office between 11:00 p.m. and 11:30 p.m. while the defendant was in the intoxilyzer room. They spoke with the defendant and observed his condition. Dr. Martin had on his person $300.00 and was willing to assume responsibility for the defendant. The magistrate informed Dr. Martin that the defendant would have to go to jail until 6:00 the following morning in order to sober up.

John Green Lewis, III, also went to the Wake County Courthouse that night to attempt to secure the defendant's release. Mr. Lewis arrived at the courthouse between 1:00 a.m. and 1:30 a.m. on Friday, 30 March 1984, and was informed that a release was not possible until 6:00 a.m. that morning. Mr. Lewis had on his person some $200.00 to post bond for the defendant. He made no further attempt to secure the defendant's release upon learning that release was not imminent and did not request to see Warren.

At approximately 2:00 a.m., the defendant was committed to the Wake County Jail. He was released at about 8:00 a.m. when Dr. Martin posted bond for him.

At the hearing on defendant's Motion to Dismiss, the trial judge made, inter alia, the following findings of fact:

3. Officer Scaringelli brought the defendant to the Wake County Courthouse and processed him in a routine manner, including administration of an intoxilyzer test. While the defendant and Officer Scaringelli were in the room used for administration of chemical tests in DWI cases in the basement of the Wake County Courthouse, Dr. Donald C. Martin and his nineteen year old son arrived at the magistrate's office to offer assistance to the defendant. They arrived between 11:00 P.M. and 11:30 P.M. after Dr. Martin had been notified of the defendant's arrest, and they informed the magistrate of their purpose.

4. After taking the intoxilyzer test, the defendant appeared with Officer Scaringelli before the magistrate shortly before 11:30 P.M. The magistrate formally charged the defendant with driving while impaired and transporting spirituous liquor in his vehicle. The magistrate did not advise the defendant concerning his right of communication with counsel and friends. . . .

. . . .

6. Dr. Martin and his son were sober, responsible adults who were willing and able to assume responsibility for the defendant for as long as required. Further, they could have arranged his pretrial release within a short period of time if permitted by the magistrate. Dr. Martin had some $300.00 on his person, which would have been more than adequate to secure the defendant's appearance in court. The magistrate was aware of these circumstances or should have been aware of them, and he nevertheless committed the defendant to the Wake County Jail notwithstanding the ability and willingness of Dr. Martin and his son to assist the defendant in gaining pretrial release immediately. The magistrate stated that the defendant would have to remain in the jail until 6:00 o'clock the following morning. Mr. Warren was committed to the jail at approximately 11:30 P.M. Dr. Martin and his son left since the magistrate made his intention clear. Dr. Martin arranged the release of the defendant at about 8:00 o'clock the following morning.

7. Between 1:00 A.M. and 1:30 A.M. on Friday, March 30, John G. Lewis, III and a friend arrived at the Wake County Courthouse to confirm the arrest of the defendant and to try to arrange for his release on bond. They approached the magistrate and were told that Mr. Warren was in jail. When they inquired about his bond, they were told something to the effect that he could not be released until around 6:00 o'clock that morning. Mr. Lewis and his friend had about $200.00 between them to apply toward his bond and could have arranged if necessary for additional funds or for the services of a bondsman in order to obtain the release of the defendant. Mr. Lewis and his friend were sober, responsible adults and were willing and able to assume responsibility for the defendant as long as required. They left when advised by the magistrate that the defendant could not be released until 6:00 o'clock that morning.

### HICKS CASE

Defendant Hicks was arrested for driving while impaired at 12:45 a.m. on 28 April 1984 in or near Knightdale by Officer Dail of the Knightdale Police Department. He was taken to the Wake County Courthouse; was given an intoxilyzer test, which indicated an alcohol concentration of 0.18; and was taken before a magistrate. Defendant was allowed to call his wife at their home in Wendell at 1:30 a.m., but she did not have a vehicle at the time and could not come to the courthouse to pick him up. When he was charged with DWI, he was not allowed to post his own $200.00 bond, though he had on his person over $2,000 in cash. Defendant remained in jail until 6:00 a.m. that morning.

At a hearing on Hicks' Motion to Dismiss, the trial judge made, inter alia, the following findings of fact:

4. After taking the intoxilyzer test, the defendant appeared with Officer Dail before a magistrate who formally charged the defendant with driving while impaired. From what the court can determine from the available records and evidence, the magistrate apparently did not inform the defendant concerning his rights about communication with counsel and friends and apparently asked neither him nor the arresting officer any questions about matters that would affect the bond in this case. . . .

5. When he advised the defendant that his bond was $200.00, the magistrate asked him if he had any money. The defendant responded that he did have enough money on him to post a $200.00 bond and showed him at least $200.00. In fact, he then had some $2,200.00 on his person. . . . [T]he magistrate committed the defendant to jail apparently based upon the inability of the defendant's wife to come pick him up at that time. The time of commitment was between 1:45 A.M. and 2:00 A.M. and the defendant remained in jail thereafter until about 6:00 A.M. the same morning.

. . . .

7. Had the defendant been released immediately upon posting bond for himself, he could have caught a taxi to go home and could have been in the presence of his wife within a short period of time, probably within 30 mintues [sic] considering the distance between Raleigh and Wendell. Too, there were others that he could have gone to see and have observe his condition had he chosen to do so, and they could have been possible witnesses for him. Moreover, he would have had the opportunity upon release to secure further chemical testing in an attempt to gather evidence in his behalf as to his alcohol concentration.

*In each of the three cases*, the trial judge made specific findings to the effect that the defendant created no disturbance and was cooperative and polite; that there was no clear and convincing evidence that, if he were released, he would create a threat of physical injury to himself or others or of damage to property; and that therefore the defendant should have been released.

While a magistrate may refuse to release one who is intoxicated to such a degree that he would be endangered by being released "without supervision," here it is quite clear that such was not the situation in any of the three cases. In the case of Knoll, whose intoxilyzer reading was 0.30, and in the case of Warren, whose reading was 0.25, neither would have been released "without supervision" but into the custody of appropriate people who were seeking their release. In the case of Hicks, whose reading was 0.18 and whose wife was temporarily unavailable to pick him up, he could have, by the use of a taxi, been in the presence of his wife within a short period of time.

With only insignificant variations in the three judgments, the specific finding in each case was substantially as follows:

At no time . . . did the defendant create any disturbance. He cooperated as required during his processing and was polite. His condition was not such to suggest that he would create problems of any kind if released without commitment to jail. There was no clear and convincing evidence that any impairment of his mental or physical faculties presented a danger, if he were released, of physical injury to himself or others or damage to property, and there was no apparent reason for him not to be released forthwith in accordance with Article 26 of Chapter 15A of the General Statutes.

Also *in each of the three cases*, the trial judge found that the defendant's confinement was at a time crucial to his ability to gather evidence and have witnesses to his condition at the time. This finding in each case reads substantially as follows:

The defendant's confinement in jail came at a crucial time when he could have gathered evidence in his behalf by having friends or others who he could have contacted observe him and form opinions as to his condition. That opportunity to gather evidence was lost because of his commitment to jail and because of his not being informed properly by the officials processing him of his various rights. The defendant has been seriously prejudiced in preparing his defense because of his commitment to jail, which was unnecessary and contrary to standards of pretrial release. . . . To assume that his lost opportunity to gather evidence in his behalf was not prejudicial is to assume that which is incapable of proof. The Court cannot assume the infallability [sic] and credibility of the State's witnesses or the certitude of their tests.

It is to be noted further that *in each of the three cases* the trial judge found that the magistrate failed to carry out his responsibilities regarding pretrial release under N.C.G.S. §§ 15A-511(b), -533(b), and -534(c). The trial judge found in each of the cases substantially as follows:

[T]he magistrate failed to inform the defendant of the circumstances under which he could secure pretrial release as required by G.S. 15A-511(b). Further, the magistrate failed to determine conditions of pretrial release in accordance with G.S. 15A-533(b) and by [-]534(c).

It is quite clear that the magistrates involved in these particular cases were on special notice of each defendant's right to be released upon meeting certain conditions. In the findings of fact *in each of the three cases*, this finding was made:

> The Honorable James H. Pou Bailey and the Honorable George F. Bason by joint order dated January 11, 1978, have required in Wake County that "a defendant being held for public intoxication or driving under the influence must be released as soon as the defendant is able to meet a magistrate's conditions of pretrial release."

With regard to this standing order, the trial judge *in each of these three cases* made a specific finding of fact that "[t]he magistrate did not carry out the spirit and intent of this requirement adequately."

Finally, the trial judge *in each of the three cases* made the following conclusions of law:

> 1. The facts of this case demonstrate that the defendant has been deprived of certain constitutional and statutory rights as claimed in his MOTION TO DISMISS . . . . Such deprivation has prejudiced him in the preparation of his defense and has resulted in an unwarranted loss of liberty for a significant period of time. . . .

> 2. The only effective remedy for the violations of the defendant's rights is dismissal of the driving while impaired charge that led to his confinement.

In reversing the dismissal of the DWI charges and remanding the cases for trial, the Court of Appeals agreed with the findings of the trial judge in each case that the magistrate failed to inform defendant of the circumstances under which he could secure his pretrial release as required by N.C.G.S. § 15A-511(b)(3); that the magistrate failed to determine conditions of pretrial release in accordance with N.C.G.S. §§ 15A-533(b) and -534(c); and that, but for these statutory deprivations, each defendant could have secured his release from jail and could have had access to friends and family.

The Court of Appeals further concluded that the *per se* prejudice rule of *State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971),

does not apply when a person is charged under N.C.G.S. § 20-138.1(a)(2) with driving "[a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more." *See* N.C.G.S. § 20-138.1(a)(2) (1983). The panel below further concluded in each case that the district court therefore erred in applying the *per se* prejudice rule of *Hill* and that, though each defendant had been substantially deprived of his statutory rights, the evidence in each case was insufficient to support the trial judge's finding of prejudice and was therefore inadequate to support the dismissal of the case.

[1]   We agree with the Court of Appeals that application of a *per se* prejudice rule as set out in *Hill* is inappropriate in cases involving a violation of N.C.G.S. § 20-138.1(a)(2) (driving with an alcohol concentration of 0.10 or more). As the Court of Appeals correctly stated in its opinion below:

> Because of the change in North Carolina's driving while intoxicated laws, denial of access is no longer inherently prejudicial to a defendant's ability to gather evidence in support of his innocence in every driving while impaired case. While denial of access was clearly prejudicial in *Hill*, under the current 0.10 statute, a defendant's only opportunity to obtain evidence is not lost automatically when he is detained, and improperly denied access to friends and family. Prejudice may or may not occur since a chemical analysis result of 0.10 or more is sufficient, on its face, to convict.

*State v. Knoll*, 84 N.C. App. 228, 233, 352 S.E. 2d 463, 466. We therefore agree with the Court of Appeals that, in those cases arising under N.C.G.S. § 20-138.1(a)(2), prejudice will not be assumed to accompany a violation of defendant's statutory rights, but rather, defendant must make a showing that he was prejudiced in order to gain relief.

Having so stated, we hasten to add that, in the view of the Court, each of the defendants in these cases made a sufficient showing of a substantial statutory violation and of the prejudice arising therefrom to warrant relief. More precisely, we conclude that the findings of the district court in each case were in no way challenged, that the evidence presented in each case was adequate to support the finding of fact that the defendant was prejudiced, and that this finding in turn supports the trial judge's

conclusion that defendant was irreparably prejudiced. Accordingly, we reverse the decision below.

[2]  The Court of Appeals correctly concluded that there are three statutes that are applicable to the issue of whether there was a substantial violation of defendant's statutory right of access to counsel and friends. First, N.C.G.S. § 15A-511(b) states:

> (b) Statement by the Magistrate.—The magistrate must inform the defendant of:
>
> > (1) The charges against him;
> >
> > (2) His right to communicate with counsel and friends; and
> >
> > (3) The general circumstances under which he may secure release under the provisions of Article 26, Bail.

Second, N.C.G.S. § 15A-533(b) reads in applicable part as follows:

> (b) A defendant charged with a noncapital offense must have conditions of pretrial release determined, in accordance with G.S. 15A-534.

Third, N.C.G.S. § 15A-534(c) provides in pertinent part the following:

> (c) In determining which conditions of release to impose, the judicial official must, on the basis of available information, take into account the nature and circumstances of the offense charged; the weight of the evidence against the defendant; . . . whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision; . . . and any other evidence relevant to the issue of pretrial release.

The Court of Appeals also correctly concluded (1) that the trial judge properly found in each case that the magistrate failed to inform the defendant of the circumstances under which he could secure his pretrial release and failed to determine conditions of pretrial release and (2) that, but for these failures and the resulting deprivation of his statutory rights, each defendant could have secured his release from jail and could have had access to friends and family.

These findings, supported by the evidence of record, and indeed unchallenged by any evidence to the contrary, are conclusive on appeal. *Fast v. Gulley*, 271 N.C. 208, 155 S.E. 2d 507 (1967). Thus, as the Court of Appeals recognized, it is established in this case that each defendant was substantially deprived of his rights. The panel below erroneously concluded, however, that the substantial deprivation of defendants' statutory rights did not result in prejudice to them. In effect, the Court of Appeals concluded that each trial judge's findings did not support his conclusion that the substantial deprivation of each defendant's rights "prejudiced him in the preparation of his defense and has resulted in an unwarranted loss of liberty for a significant period of time" and that "[t]he only effective remedy for the violations of the defendant's rights is dismissal of the driving while impaired charge that led to his confinement." It is in this latter conclusion that the panel below erred.

We find that the trial judges' conclusions of prejudice are amply supported by the unchallenged findings, which are themselves amply supported by the evidence. The Court of Appeals itself, in its opinion below, stated that a defendant in a case such as this

> must show that "lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost" as a result of the statutory deprivations of which he complains.

*State v. Knoll*, 84 N.C. App. 228, 234, 352 S.E. 2d 463, 466 (1987) (quoting *State v. Dietz*, 289 N.C. 488, 493, 223 S.E. 2d 357, 360 (1976)). Such was exactly the situation in the three cases now before us, and the several trial judges correctly so found.

Each defendant's confinement in jail indeed came during the crucial period in which he could have gathered evidence in his behalf by having friends and family observe him and form opinions as to his condition following arrest. This opportunity to gather evidence and to prepare a case in his own defense was lost to each defendant as a direct result of a lack of information during processing as to numerous important rights and because of the commitment to jail. The lost opportunities, in all three cases, to secure independent proof of sobriety, and the lost chance, in one of the cases, to secure a second test for blood alcohol content

constitute prejudice to the defendants in these cases. That the deprivations occurred through the inadvertence rather than the wrongful purpose of the magistrate renders them no less prejudicial. *State v. Graves*, 251 N.C. 550, 112 S.E. 2d 85 (1960).

Accordingly, the decision of the Court of Appeals is reversed, and the cases are remanded to the Court of Appeals for further remand to the Superior Court, Wake County, for reinstatement of the judgment of dismissal in each of the cases.

Reversed.