An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1423

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.

AMY MOORE CLOER

Mecklenburg County
No. 10 CRS 237504

Appeal by defendant from judgment entered 24 May 2013 by Judge Richard L. Doughton in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*

> *Arnold & Smith, PLLC, by Laura M. Cobb, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Amy Moore Cloer ("Defendant") appeals from a judgment for Driving While Impaired ("DWI"). Defendant argues that Magistrate Peters violated her constitutional rights and her statutory rights under N.C. Gen. Stat. §§ 15A-501, 15A-511, and 15A-954 (2013) during her initial appearance at the Mecklenburg County Jail. Specifically, Defendant contends: (1) that

Magistrate Peters violated N.C. Gen. Stat. § 15A-511 when she did not inform Defendant of her pretrial rights; (2) that Magistrate Peters did not provide any written findings for setting a secured bond in violation of N.C. Gen. Stat. § 15A-534 (2013) and the Twenty-Sixth Judicial District's Bail Policy; and (3) that Defendant's lengthy pre-trial confinement prevented her from meeting with friends and family members who could have observed her condition during her pretrial confinement. Thus, Defendant contends that the magistrate's errors were prejudicial to her case, warranting a dismissal of the DWI judgment. After review, we find no prejudicial error.

## I. Facts & Procedural History

On 4 August 2010, at 11:30 p.m., Officer Jeffery Baucom ("Officer Baucom") of the Charlotte-Mecklenburg Police Department received a dispatch call to respond to a traffic accident at the intersection of 7th Street and North Tryon Street in Mecklenburg County. At the time Officer Baucom received the call, he was less than twenty-five yards from the scene of the accident. Officer Baucom also heard the accident when it occurred and he responded on foot. Once Officer Baucom arrived at the scene, he called for emergency personnel assistance and started his investigation of the accident scene.

During his investigation, Officer Baucom spoke with Defendant, the driver of one of the vehicles involved in the accident. While speaking with Defendant, Officer Baucom detected a moderate smell of alcohol coming from Defendant and noticed Defendant's red, glassy eyes. Upon further inquiry, Defendant told Officer Baucom that she had been drinking earlier that day.

After Officer Baucom and the other responding officers secured the accident site, Officer Baucom conducted field sobriety tests on Defendant. Officer Baucom administered the horizontal gaze nystagmus test, the one-leg stand test, and the walk-and-turn test. During each test, Defendant exhibited signs of impairment and Officer Baucom determined that she was impaired by alcohol. Officer Baucom placed Defendant under arrest for DWI and transported her to the Mecklenburg County Intake Center. Before her processing took place, Defendant was allowed to keep her credit card in order to post her bond.

At 12:56 a.m., Officer Baucom advised Defendant of her rights before administering an intoxilyzer test. Pursuant to N.C. Gen. Stat. § 20-16.2 (2013), Officer Baucom advised Defendant of her right to call an attorney and her right to call a witness to view the intoxilyzer test. Defendant signed an intoxilyzer rights form and waived her statutory rights.

Officer Baucom administered two intoxilyzer tests of Defendant, and the results of the two tests revealed that Defendant's blood alcohol level was 0.10.

Thereafter, Officer Baucom read Defendant her *Miranda* rights. Defendant signed the *Miranda* rights form indicating that she understood her rights at 1:23 a.m. After signing the form, Defendant agreed to answer questions about the accident. During questioning, Defendant stated that she started drinking at 1:00 p.m. and that she consumed five beers and one or two alcoholic beverages. When asked if she was under the influence of an alcoholic beverage, Defendant responded, "I guess so."

At 1:31 a.m., intake officers moved Defendant to a waiting area where telephones were available to her. After a thirty-minute wait, Magistrate Peters set Defendant's conditions for release. The conditions for release allowed Defendant to secure release in one of two ways: she could post a $500 secured bond or she could obtain custody release to a sober licensed adult.

After the conditions for release were set, Magistrate Peters read Defendant the provisions of an Implied Consent Offense Notice form pursuant to N.C. Gen. Stat. § 20-38.4 (2013). The form required Magistrate Peters to inform Defendant of her rights to have witnesses observe her condition in jail,

to have an additional chemical test administered, and to list people that she wished to contact. Defendant provided names and numbers of three persons that she wanted to contact, but the record does not show that Defendant contacted any of these persons. Magistrate Peters and Defendant both signed the Implied Consent form at 2:33 a.m.

After she signed the form, Defendant waited in jail reception for thirty-minutes before re-entering the magistrate's chambers. During her wait, Defendant once again had access to telephones. At 3:03 a.m., Defendant met with Magistrate Peters a second time, but it is unclear from the record what transpired during this short encounter. After her second appearance, Defendant entered jail reception at 3:16 a.m.

At 4:44 a.m., Defendant received a receipt for using the Touch Pay machine to pay her bond. Though the receipt read 3:44 a.m., Deputy James Ingram ("Deputy Ingram"), keeper of records for the Mecklenburg County Jail, testified at trial that the receipt was based on Central Time because the machine was owned and operated by a company based in Texas. The jail's finance department received the secured bond amount of $500 at 5:31 a.m.

At 6:42 a.m., jail staff notified Defendant that she met the conditions of her release. Due to the jail's shift change

at 6:40 a.m., Defendant did not arrive to the release post until 7:17 a.m. Officers released Defendant from custody at 7:22 a.m. Although it is unclear at what time Defendant's custody started at the Mecklenburg County Jail, Defendant was in pretrial confinement for a timespan between six hours and thirty-minutes to eight hours.

On 17 February 2011, the Mecklenburg County District Court found Defendant guilty of DWI. After appealing to Mecklenburg County Superior Court, Defendant filed a motion to dismiss the DWI charge, alleging that Magistrate Peters violated her initial appearance rights. During her motion hearing on 23 May 2013, Defendant testified that she was told to remain seated and quiet while waiting to speak with Magistrate Peters. Defendant stated that during her appearance, Magistrate Peters informed Defendant of her DWI charge and required Defendant to post a $500 bond. She also testified that after speaking with Magistrate Peters, she was moved to a smaller room with access to telephones. Defendant stated that she was nervous and that she felt like she needed to stay seated and quiet because officers took an individual away from the holding area after that person raised concerns about the telephones not working properly. Defendant testified that she tried to use the telephones but she was

unable to hear who she called. Deputy Ingram testified that DWI offenders are allowed to use telephones in the waiting area before and after their initial appearance. Based on the foregoing evidence, the superior court denied Defendant's motion to dismiss.

Defendant's trial began on 23 May 2013 in Mecklenburg County Superior Court. At trial, Defendant testified that she tried to use the telephones in the jail reception area but she was unable to contact anyone because the phones were not working properly. Defendant also testified that she attempted to use her credit card to pay her bond around 3:00 a.m., but the machine was temporarily shutdown. Defendant further testified that she knew about bail bondsmen, but she did not attempt to contact a bondsman in order to secure her release. After trial, the jury reached a unanimous verdict, finding Defendant guilty of DWI. Judge Doughton sentenced Defendant to thirty days in jail but suspended the sentence, placing Defendant on supervised probation for twelve months. Defendant filed timely written notice of appeal on 28 May 2013.

## II. Jurisdiction & Standard of Review

As Defendant appeals from the final judgment of a superior court, an appeal lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2013).

On appeal from a trial court's denial of a motion to dismiss:

> the standard of review is whether there is competent evidence to support the findings and the conclusions. If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.

*State v. Lewis*, 147 N.C. App. 274, 277, 555 S.E.2d 348, 351 (2001) (internal quotation marks and citations omitted). "If the findings of the trial court are supported by competent evidence, they are binding on the appellate courts." *State v. Bright*, 301 N.C. 243, 254, 271 S.E.2d 368, 375 (1980). "Our task is not to re-weigh the evidence before the trial court but to uphold the trial court's findings so long as they are supported by competent evidence, even if there also exists evidence to the contrary." *State v. Daniel*, 208 N.C. App. 364, 369, 702 S.E.2d 306, 309 (2010).

## III. Analysis

### A. Defendant's Right to Communicate with Counsel and Witnesses

Defendant argues the trial court erred by denying her motion to dismiss because the magistrate failed to inform Defendant of her rights to communicate with counsel and friends pursuant to N.C. Gen. Stat. § 15A-511(b). We disagree.

N.C. Gen. Stat. § 15A-511(b) provides: "The magistrate must inform the defendant of: (1) The charges against him; (2) His right to communicate with counsel and friends; and (3) The general circumstances under which he may secure release under the provisions of Article 26, Bail."

In its order denying Defendant's motion to dismiss, the trial court made the finding that "the defendant signed the Implied Consent Offense Notice and was notified of her charges and her rights to obtain her own chemical test and to have witnesses present at the jail." Provisions 4 and 5 of the Implied Consent Offense Notice state:

> 4. The [magistrate] informed the defendant in writing of the established procedure to have others appear at the jail to observe the defendant's condition or to administer an additional chemical analysis.
>
> 5. The [magistrate] required the defendant to list all persons the defendant wishes to contact and telephone numbers on a copy of this form.

Defendant signed the form, indicating that she understood those rights. Defendant also listed three persons that she wanted to contact on the Implied Consent form.

In *State v. Haas*, 131 N.C. App. 113, 505 S.E.2d 311 (1998), the defendant argued that he was prejudiced because the issuing magistrate did not inform him of his right to contact family members and friends. *Id.* at 115, 505 S.E.2d at 312. At trial, the defendant testified that the magistrate informed him of his access to a telephone, and that he signed a form certifying his opportunity to contact witnesses. *Id.* at 116, 505 S.E.2d at 313. This Court held that the trial court's finding — that the magistrate did not commit an error — provided indirect evidence that the magistrate informed the defendant of his right to communicate with counsel and friends. *Id.*

Here, as in *Haas*, Defendant signed a form notifying her of her right to contact witnesses. Based on Defendant's entries of persons to contact and her signature on the Implied Consent form, Defendant had knowledge of her right to contact witnesses. For the foregoing reasons, the Implied Consent form put Defendant on notice of her pretrial rights to communicate with counsel and friends.

## B. Pre-trial Release Procedures

Defendant argues that the trial court erred when it denied her motion to dismiss because the magistrate failed to make written findings and failed to follow the statutory pre-trial release procedures. We agree that the magistrate failed to follow the statutory procedures, but we do not find that the errors constitute irreparable prejudice.

A person charged with a noncapital offense, "must have conditions of pretrial release determined, in accordance with G.S. 15A-534." N.C. Gen. Stat. § 15A-533(b) (2013). According to N.C. Gen. Stat. § 15A-534, a magistrate must impose one of five conditions:

> (1) Release the defendant on his written promise to appear.
>
> (2) Release the defendant upon his execution of an unsecured appearance bond in an amount specified by the judicial official.
>
> (3) Place the defendant in the custody of a designated person or organization agreeing to supervise him.
>
> (4) Require the execution of an appearance bond in a specified amount secured by a cash deposit . . . by a mortgage . . . or by at least one solvent surety.
>
> (5) House arrest with electronic monitoring.

The magistrate must release the defendant under conditions (1), (2), or (3) "unless he determines that such release will not

reasonably assure the appearance of the defendant as required; will pose a danger of injury to any person; or is likely to result in destruction of evidence, subornation of perjury, or intimidation of potential witnesses." N.C. Gen. Stat. § 15A-534(b). When a magistrate determines which condition must be imposed, he must follow the procedure outlined in N.C. Gen. Stat. § 15A-534(c). The magistrate:

> must, on the basis of available information, take into account the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties, employment, financial resources, character, and mental condition; whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision; the length of his residence in the community; his record of convictions; his history of flight to avoid prosecution or failure to appear at court proceedings; and any other evidence relevant to the issue of pretrial release.

N.C. Gen. Stat. § 15A-534(c) (2013).

If the magistrate determines that a defendant poses a danger to the public, then he must impose condition (4) or (5). N.C. Gen. Stat. § 15A-534(d2)(1). If the magistrate imposes condition (4) or (5), the magistrate "*must record* the reasons for so doing *in writing* to the extent provided in the policies or requirements issued by the senior resident superior court

judge pursuant to G.S. 15A-535(a)." N.C. Gen. Stat. § 15A-534(b) (emphasis added).

N.C. Gen. Stat. § 15A-535(a) regulates the setting of bail policies for each judicial district. The bail policy in Mecklenburg County requires magistrates to place a letter code justifying the requirement of a secured bond. Defendant's condition of release order does not contain any letter code justification for imposing the secured bond in violation of the bail policy.

In the present case, the magistrate set two conditions for Defendant's release: (1) custody release to a sober licensed adult or (2) a secured bond in the amount of $500. Since Magistrate Peters imposed a secured bond, she had to determine that Defendant was a flight risk, that Defendant would destroy evidence, or that Defendant posed a danger to the public. *See* N.C. Gen. Stat. § 15A-534(b). There is no evidence in the record that the magistrate made such a determination. Since the magistrate failed to record the reason for setting Defendant's bond in writing, the magistrate violated N.C. Gen. Stat. § 15A-534 and Mecklenburg County's bail policy.

Defendant argues that the magistrate's statutory violations caused irreparable prejudice and she requests dismissal of the DWI charge and judgment. We disagree.

"Before a motion to dismiss should be granted . . . it must appear that the statutory violation caused irreparable prejudice to the preparation of defendant's case." *State v. Rasmussen*, 158 N.C. App. 544, 549-50, 582 S.E.2d 44, 50 (2003) (internal quotation marks and citations omitted). "[P]rejudice will not be assumed to accompany a violation of defendant's statutory rights, but rather, defendant must make a showing that he was prejudiced in order to gain relief." *State v. Knoll*, 322 N.C. 535, 545, 369 S.E.2d 558, 564 (1988).

In *State v. Gilbert*, 85 N.C. App. 594, 355 S.E.2d 261 (1987), the magistrate informed the defendant of his right to an independent chemical test, but the defendant chose not to seek a second test. *Id.* at 597, 355 S.E.2d at 263. Moreover, the defendant's brother visited the defendant shortly after his intoxilyzer test. *Id.* at 597, 355 S.E.2d at 264. The Wake County Superior Court dismissed the DWI charge against the defendant because the defendant alleged that the magistrate's failure to inform him of his rights warranted a dismissal of the charge. *Id.* at 594-95, 355 S.E.2d at 262. The State appealed

and this Court held that the defendant failed to show prejudice because the defendant knew of his right to obtain an independent chemical test and "there [was] nothing in the record to show that defendant requested, or was denied, access to anyone." *Id.* at 597, 355 S.E.2d at 264.

In *State v. Labinski*, 188 N.C. App. 120, 654 S.E.2d 740 (2008), the defendant alleged that the magistrate denied her access to family and friends during a critical time of her pretrial confinement. *Id.* at 125, 654 S.E.2d at 745. The defendant was informed of her right to have witnesses present at her intoxilyzer test, but she did not request a witness even though four of her friends were present at the jail. *Id.* at 128, 654 S.E.2d at 745. Additionally, the defendant saw that her friends were present at the jail, but the defendant did not ask to speak with them. *Id.* The defendant also had access to telephones and she made phone calls while waiting for her release. *Id.* This Court found that the magistrate violated the defendant's rights because there was no evidence that she would be a danger to the public if she were released subject to conditions other than a secured bond. *Id.* at 127, 654 S.E.2d at 744-45. However, we held that the magistrate's error did not rise to the level of irreparable prejudice because the defendant

had access to witnesses but she chose not to exercise that right. *Id.* at 128, 654 S.E.2d at 745.

Similar to *Gilbert*, in this case, Magistrate Peters notified Defendant of her right to have an additional intoxilyzer test performed. Defendant signed the implied consent form, indicating her knowledge of her rights, but there is no evidence that Defendant sought to have another test administered.

Similar to *Labinski*, Defendant had access to telephones before and after she met with the magistrate, and she had the opportunity to contact witnesses. *Labinski*, 188 N.C. App. at 122, 654 S.E.2d at 743. Even though there was evidence that the phones were not working properly, there is no evidence that the Mecklenburg County Jail staff or Magistrate Peters prevented her from calling anyone and no evidence that the Jail staff caused the phones to work improperly.

Accordingly, Defendant was not irreparably prejudiced in the preparation of her defense. The observations of witnesses at the jail would not be likely to outweigh the evidence at trial in favor of conviction. Defendant admitted to Officer Baucom that she had started drinking around 1:00 p.m. that day and Defendant failed Officer Baucom's field sobriety tests that

he administered at the accident scene. When Officer Baucom asked Defendant if she was under the influence of alcohol, Defendant stated, "I guess so." Intoxilyzer tests revealed her blood alcohol concentration to be 0.10, which is above the legal limit. N.C. Gen. Stat. § 20-138.1(a)(2) (2013). This evidence is sufficient to show Defendant's impairment and to support a conviction for DWI. Thus, Defendant was not irreparably prejudiced by the magistrate's statutory violations and the inability to contact witnesses to observe her condition in jail.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is

AFFIRMED.

Judge STROUD concurs in a separate opinion.

Judge DILLON concurs.

Report per Rule 30(e).

NO. COA13-1423

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

    v.

AMY CLOER,
    Defendant.

Mecklenburg County
No. 10CRS237504

STROUD, Judge, concurring.

While I agree with the majority's decision, I write separately to further clarify why I find the case law cited by the majority distinguishable from the present case, although the result remains the same. The majority relies heavily on *State v. Labinski*, in which the magistrate "violated defendant's statutory right to pretrial release" when he set a secured bond without evidence to support such a determination, 188 N.C. App. 120, 126-27, 654 S.E.2d 740, 744-45, *disc. review denied*, 362 N.C. 367, 661 S.E.2d 889 (2008), just as the magistrate here did. Yet in *Labinski*, this Court determined that the defendant was not denied of her *opportunity* to exercise her pre-trial rights, and thus there was no prejudice resulting from the magistrate's error. *Id.* at 128, 654 S.E.2d at 745 (The "defendant was informed of her right to have a witness present for the intoxilyzer test but did not request a witness, even

though four of her friends were in fact present at the PCDC at the proper time and could have witnessed the test. Defendant's four friends were present at the PCDC by the time defendant left the intoxilyzer room and they remained until her release. Defendant was able to see her friends and they could see her, but she did not ask to speak to them or that they be permitted to come to her. Defendant also had full access to a telephone and in fact made several phone calls from the PCDC.")  I do not agree that defendant here was afforded the same opportunity as in *Labinski*.  *Contrast id.*  In *Labinski*, as a practical matter, the defendant lost her opportunity only due to her own failure to ask for her friends who were actually present.  *See id.* Here, defendant lost her opportunity to contact someone, but the loss of opportunity was not from her own inaction, but apparently from the functioning of the jail phone.

Regarding defendant's attempt to make phone calls, the majority notes "there was evidence that the phones were not working properly, [but] there is no evidence that the Mecklenburg County Jail staff or Magistrate Peters prevented her from calling anyone and no evidence that the Jail staff caused the phones to work improperly."  Although this statement may be correct, if the phones were not working, for whatever reason,

then defendant was denied the *opportunity* to make phone calls.[1] When an arrestee is given the right to use a jail phone to call for help, that phone should operate in a reasonable and normal manner and give the arrestee a realistic *opportunity* to speak with the person they are attempting to contact. Furthermore, unlike the *Labinski* case, and perhaps due to the non-working phones, defendant here did not have anyone present who could observe her. *Contrast id.* The defendant in *Labinski* actually saw that her friends were at the jail but chose not to speak to them or ask that they come to her despite the fact that she had been informed of her rights. *Id.*

However, I do concur that the magistrate's violation of North Carolina General Statute § 15A-534 is not what caused defendant to lose her opportunity to exercise her rights. This case can be contrasted with *State v. Knoll*, wherein three similar cases were consolidated. 322 N.C. 535, 369 S.E.2d 558 (1988). In the three *Knoll* cases, the magistrates themselves

---

[1] Actually, defendant's evidence indicated that the phone which defendant used at the jail was set up in such a manner that if an arrestee makes a call to another person's cell phone, the arrestee will not be able to hear the person who answered on the cell phone; in other words, an arrestee would be able to call only a person who has a landline phone, despite the fact than many people have now ceased to use landline phones. *If* defendant's claims as to the inability to call a cell phone number from the jail is correct, this technological issue should be corrected.

actually denied the defendants the opportunity to exercise their rights: (1) The magistrate denied Mr. Knoll's father the right to come pick up his son, the defendant, for approximately six hours. *Id*. at 537-38, 369 S.E.2d at 560. (2) The magistrate would not allow two people present to take the defendant, Mr. Warren, nor would he allow them to post the defendant's bond which resulted in the defendant being in custody approximately eight to nine hours longer than necessary. *Id.* at 539-40, 369 S.E.2d at 561-62. (3) The magistrate would not allow the defendant, Mr. Hicks, to post his own bond, despite the fact that Mr. Hicks could have then taken a taxi home to his wife and been with her within approximately 30 minutes. *Id.* at 541-42, 369 S.E.2d at 562.

Our Supreme Court stated:

> Each defendant's confinement in jail indeed came during the crucial period in which he could have gathered evidence in his behalf by having friends and family observe him and form opinions as to his condition following arrest. *This opportunity to gather evidence and to prepare a case in his own defense was lost* to each defendant as a direct result of a lack of information during processing as to numerous important rights and because of the commitment to jail. The lost opportunities, in all three cases, to secure independent proof of sobriety, and the lost chance, in one of the cases, to secure a second test for blood alcohol content constitute prejudice to the

defendants in these cases.

322 N.C. at 547-48, 369 S.E.2d at 565 (emphasis added).

Here, unlike in *Knoll*, *see id.* at 537-42, 369 S.E.2d at 560-62, it was not the magistrate's violation that caused defendant to lose her rights as she was permitted to make her phone calls, but the loss of opportunity was caused by whatever entity was responsible for the phones, if the phones were unlikely to permit defendant to be able contact anyone. However, defendant has not made any argument as to a violation of her rights by any law enforcement agency. Any prejudice in defendant's case was not the result of the magistrate's errors, and this is the only issue she raises on appeal, so I too must find no error.