STATE OF NORTH CAROLINA v. LINDA DANIEL, Defendant

No. COA09-1264

(Filed 7 December 2010)

**Motor Vehicles— driving while impaired—length of detention**

In a case dealing with the length of time driving while impaired defendant was detained and the denial of defendant's motion to dismiss the charge, the trial court's finding that defendant's roommate was determined not to fulfill the statutory requirements of being a sober, responsible adult was supported by the evidence. Further more, the court's conclusion that no substantial violation of defendant's rights had occurred was supported by the evidence.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 23 April 2009 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 March 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for defendant-appellant.*

JACKSON, Judge.

Linda Daniel ("defendant") appeals her 23 April 2009 conviction for driving while impaired based upon the 18 December 2008 denial of her motion to dismiss the charge. For the reasons discussed herein, we affirm.

At approximately 8:26 p.m. on 29 December 2007, Charlotte-Mecklenburg Police Officer A.L. Holt ("Officer Holt") observed a red GMC Jimmy ("the car") swerve outside of the appropriate travel lane multiple times. It was later determined that defendant was the driver of the car. Officer Holt activated his blue lights to stop defendant's car; she came to a stop in a left turn lane but began to drive away when the traffic light turned green. Officer Holt "bang[ed] on the side of the car" and defendant stopped ten to fifteen feet from her original stopping

**STATE v. DANIEL**

[208 N.C. App. 364 (2010)]

point. Officer Holt observed that defendant was sitting in the driver's seat of the car, that there was "a strong odor of alcohol about her breath[,]" and that defendant had bloodshot eyes and dilated pupils. When asked, defendant denied that she had been drinking.

Officer Holt asked defendant to step out of the car in order to take three field sobriety tests. Defendant held onto the door of the car when she exited it and "stumbled" as she stepped out. Defendant subsequently failed the "one legged stand" test, the "walk and turn" test, and the "finger to nose" test, leading Officer Holt to form the opinion that defendant was appreciably impaired by alcohol. Officer Holt placed defendant under arrest for driving while impaired (DWI), driving while license revoked, and transporting an open container. He then transported her to the Mecklenburg County Intake Center.

Meanwhile, two other Charlotte-Mecklenburg police officers arrived at the scene to conduct a search of the car. That search produced nine empty or open containers of beer, several bottle caps, and a half-full cup of beer in a cup holder. Officer D. Pogue ("Officer Pogue") remained with the car until defendant's roommate, Jack Bruce ("Bruce"), arrived at the scene on foot in order to take possession of the car. Officer Pogue testified that Bruce "had the smell of alcoholic beverage coming from his mouth, his person." Nonetheless, he gave Bruce the car keys. According to Officer Pogue, the "main concern is to relinquish control [of the car] out of our custody" in case "something happens to the vehicle[.]"

Upon arrival at the Intake Center, defendant was asked to submit to a chemical analysis of her breath via the Intoxilyzer. Defendant consented and waived her statutory right to have either an attorney or witness present. The analysis was conducted at 10:32 p.m., and defendant's Intoxilyzer results indicated a blood alcohol concentration of 0.17, more than twice the legal limit of 0.08.

Bruce arrived at the jail sometime between 11:00 p.m. and 12:25 a.m. He talked with a sheriff's deputy and then with "a lady behind a window." The woman asked Bruce if he had had anything to drink that day, and he responded that he "had dr[u]nk a beer at . . . supper." She informed him of "the amount of the bond" and "the charges[.]" According to Bruce, she then "insisted that [he] needed to get a female to get [defendant] out." According to police records, defendant's processing was not completed until approximately midnight. At approximately 12:40 a.m., Bruce personally met with defendant. He met with her for approximately eight minutes, spoke with and

observed her, and testified that "she definitely appeared upset[,]" "she had been crying," and "her speech was good." Defendant was not released into Bruce's custody until 6:34 p.m. on 30 December 2007, nearly twenty-four hours after her initial traffic stop.

Defendant's motion to dismiss the DWI charge was heard and denied on 18 December 2008. On 23 April 2009, following a trial by jury, defendant was found guilty of DWI. Defendant appeals.

Defendant's sole argument on appeal is that the trial court erred by denying her motion to dismiss, because the lengthy detention violated her statutory rights to the point of irreparably prejudicing any preparation of a defense to the charge. We disagree.

Our review of the denial of a motion to dismiss based upon alleged violations of statutes is limited to " 'whether there is competent evidence to support the findings and the conclusions. If there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.' " *State v. Labinski*, 188 N.C. App. 120, 124, 654 S.E.2d 740, 743 (quoting *State v. Lewis*, 147 N.C. App. 274, 277, 555 S.E.2d 348, 351 (2001)), *disc. rev. denied*, 362 N.C. 367, 661 S.E.2d 889 (2008). "Findings of fact which are not challenged 'are presumed to be correct and are binding on appeal.' " *Id.* (quoting *State v. Eliason*, 100 N.C. App. 313, 315, 395 S.E.2d 702, 703 (1990)).

"Dismissal of charges for violations of statutory rights 'is a drastic remedy which should be granted sparingly. Before a motion to dismiss should be granted . . . it must appear that the statutory violation caused irreparable prejudice to the preparation of defendant's case.' " *Id.* at 124, 654 S.E.2d at 742-43 (quoting *State v. Rasmussen*, 158 N.C. App. 544, 549-50, 582 S.E.2d 44, 50, *disc. rev. denied*, 357 N.C. 581, 589 S.E.2d 362 (2003)) (emphasis removed).

In *State v. Knoll*, our Supreme Court set forth the analysis governing dismissal of charges based upon alleged statutory violations. 322 N.C. 535, 369 S.E.2d 558 (1988) ("*Knoll II*"). In that case, three separate cases were consolidated. *Id.* at 536, 369 S.E.2d at 559. In each of the three cases, the trial courts had dismissed the DWI charges based upon the State's violations of numerous statutes. *Id.* On appeal, this Court had reversed the trial courts, noting that

[b]ecause of the change in North Carolina's driving while intoxicated laws, denial of access is no longer inherently prejudicial to

a defendant's ability to gather evidence in support of his inno-
cence in every driving while impaired case. While denial of
access was clearly prejudicial in *Hill*, under the current 0.10
statute, a defendant's only opportunity to obtain evidence is not
lost automatically, when he is detained, and improperly denied
access to friends and family. Prejudice may or may not occur
since a chemical analysis result of 0.10 or more is sufficient, on
its face, to convict.

*State v. Knoll*, 84 N.C. App. 228, 233, 352 S.E.2d 463, 466 (1987)
("*Knoll I*"), *rev'd by Knoll II, supra*. Even though our Supreme Court
agreed with this Court's holding that "prejudice will not be assumed
to accompany a violation of defendant's statutory rights, but rather,
defendant must make a showing that he was prejudiced in order to
gain relief[,]" *Knoll II*, 322 N.C. at 545, 369 S.E.2d at 564, it reversed
this Court and affirmed the trial courts, *id.* at 548, 369 S.E.2d at
565-66. According to the *Knoll II* Court, each of the defendants in
these cases made a sufficient showing of a substantial statutory vio-
lation and of the prejudice arising therefrom to warrant relief. More
precisely, we conclude that the findings of the district court in each
case were in no way challenged, that the evidence presented in each
case was adequate to support the finding of fact that the defendant
was prejudiced, and that this finding in turn supports the trial
judge's conclusion that defendant was irreparably prejudiced.

*Id.* at 545-46, 369 S.E.2d at 564.

In *Knoll II*, our Supreme Court emphasized the findings of the
separate trial courts and that such findings, if unchallenged or if sup-
ported by competent evidence, would not be disturbed on appeal. *Id.*
at 547, 369 S.E.2d at 565. Specifically, the *Knoll II* Court noted that
each trial court had made findings that (1) the defendant was coop-
erative and did not create any disturbance; (2) the time of confine-
ment was crucial to the defendant's ability to gather evidence for his
defense; and (3) the magistrate had "failed to carry out his responsi-
bilities regarding pretrial release under N.C.G.S. §§ 15A-511(b),
-533(b), and -534(c)." *Id.* at 543, 369 S.E.2d at 563. These findings
supported each trial court's determination that dismissal of the
defendant's charge was warranted. *Id.* at 545-46, 369 S.E.2d at 564. We
are not confronted with the same dilemmas in the instant case.

First, unlike the trial courts in Knoll II, the trial court here denied
defendant's motion to dismiss. Pursuant to our standard of review, we
must determine only whether the trial court's finding of fact—"It

appears that that magistrate determined Mr. Bruce not to be a sober, responsible adult willing to assume responsibility for the defendant" —is supported by competent evidence, because defendant's assignments of error challenged only that finding.[1]

Here, the trial court had evidence before it that (1) a police officer had smelled alcohol on Bruce's breath earlier in the evening and (2) Bruce had responded in the affirmative when asked whether he had been drinking prior to being denied access to defendant. Furthermore, when asked whether he was given a reason as to why defendant was not released to him, Bruce testified, "They said because I had dr[u]nk a beer earlier in the day." The trial court's findings reflect this evidence:

> Officer Pogue noticed an odor of alcohol on Mr. Bruce's person, but nonetheless relinquished to Mr. Bruce the keys to the defendant's vehicle.
>
> . . . .
>
> Mr. Bruce has testified when he appeared at the jail the lady behind the glass asked him if he had had anything to drink that day, [to] which he answered yes, that he had consumed one beer with his dinner.

As noted *supra*, defendant does not challenge either of these findings. Based upon these findings, the trial court further found

> [t]his testimony, coupled with the testimony of Officer Pogue that he noticed an odor of alcohol about the breath or person of Mr. Bruce, creates at least some indication that the persons charged with making the determinations . . .
>
> [interruption to discuss whether the person who talked with Bruce was, in fact, a magistrate]
>
> . . . determined Mr. Bruce not to be a sober, responsible adult willing to assume responsibility for the defendant.

Even though defendant introduced evidence that Bruce was told that he was denied access based upon his gender, the trial court resolved that evidentiary conflict, and it is not our province to disturb its

---

1. Although our current Rules of Appellate Procedure require an appellant to provide only general "issues presented on appeal" in order to preserve questions for appeal, this appeal was filed prior to 1 October 2009, and therefore, is subject to the stricter "assignments of error" analysis. N.C.R. App. P. 10(c)(1) (2007).

determination. *See Labinski*, 188 N.C. App. at 124, 654 S.E.2d at 743 (quoting *State v. Lewis*, 147 N.C. App. 274, 277, 555 S.E.2d 348, 351 (2001)). Our task is not to re-weigh the evidence before the trial court but to uphold the trial court's findings so long as they are supported by competent evidence, even if there also exists evidence to the contrary. *State v. Lewis*, 147 N.C. App. 274, 277, 555 S.E.2d 348, 351 (2001) (citing *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982)). Accordingly, as in *Knoll II*, we uphold the trial court's finding—that Bruce was determined not to fulfill the statutory requirements of being a sober, responsible adult—because it is supported by the evidence.

Second, in *Knoll II*, three separate statutes, intended to provide procedural protections to people suspected of driving while intoxicated, were violated in each of the cases before that Court. North Carolina General Statutes, section 15A-511(b) requires that the magistrate inform a defendant during her initial appearance of "(1) [t]he charges against [her]; (2) [her] right to communicate with counsel and friends; and (3) [t]he general circumstances under which [s]he may secure release under the provisions of Article 26, Bail." N.C. Gen. Stat. § 15A-511(b) (2005). North Carolina General Statutes, section 15A-533(b) provides that, in noncapital cases, a defendant "must have conditions of pretrial release determined, in accordance with G.S. 15A-534." N.C. Gen. Stat. § 15A-533(b) (2005). According to North Carolina General Statutes, section 15A-534(c),

> In determining which conditions of release to impose, the judicial official must, on the basis of available information, take into account the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties, employment, financial resources, character, and mental condition; whether the defendant is intoxicated to such a degree that [s]he would be endangered by being released without supervision; the length of [her] residence in the community; [her] record of convictions; [her] history of flight to avoid prosecution or failure to appear at court proceedings; and any other evidence relevant to the issue of pretrial release.

N.C. Gen. Stat. § 15A-534(c) (2005).

Here, in contrast with *Knoll II*, defendant does not argue that multiple statutes were violated in her detention. She does not contend that violations of her rights occurred during her initial appearance; her sole argument is that, even though the conditions of her

pretrial release were satisfied, she was not released. Specifically, defendant contends that her rights were violated only pursuant to North Carolina General Statutes, section 15A-534.2(c), which provides that

> [a] defendant subject to detention under this section has the right to pretrial release under G.S. 15A-534 when the judicial official determines either that:
>
> . . . .
>
> (2) A sober, responsible adult is willing and able to assume responsibility for the defendant until [her] physical and mental faculties are no longer impaired. . . .

N.C. Gen. Stat. § 15A-534.2(c) (2005). In the instant case, no such determination was reached. Although Bruce presented himself as the person "willing and able to assume responsibility for [] defendant[,]" he was determined not to be "[a] sober, responsible adult[.]" Therefore, defendant's argument must fail.

Third, the trial court's two conclusions of law, only the first of which was challenged by defendant, were as follows:

> [G]iven the fact that [defendant] met personally with Mr. Bruce and did not request a witness and was not denied the opportunity for a witness to view the chemical analysis, that the defendant has failed to demonstrate any prejudice in the manner in which she was detained or any denial of her access to friends or family during the period of the detention, to serve to deprive her of the benefit of any evidence that might have been used on her behalf in defense of these charges.
>
> . . . .
>
> [T]he violations, if any, of the defendant's rights under the statute G.S. 15A-534.2, as well as her rights under the United States Constitution and the Constitution of the State of North Carolina, had not been violated so f[l]agrantly at least so as to bear a dismissal of these proceedings.

Taken together, it is clear that the trial court concluded that (1) no statutory violation occurred, and (2) even if a violation occurred, defendant has not shown that she was "irreparably prejudiced" by such violation.

Pursuant to our standard of review, we must determine whether the challenged conclusion is supported by the evidence. In the instant

**STATE v. DANIEL**

[208 N.C. App. 364 (2010)]

case, the State presented evidence that (1) defendant was advised that she could request an attorney or other witness to observe her Intoxilyzer test, (2) defendant declined to request a witness for the test, (3) Bruce was allowed to see defendant within twenty-five minutes of her exiting the magistrate's office, (4) Bruce met personally with defendant, and (5) Bruce was able to talk with and observe defendant for approximately eight minutes. The trial court made findings of fact that reflect this evidence, and defendant does not challenge these findings.

Because the procedural protections of the statutes challenged in *Knoll II* remained intact in the instant case, the trial court's conclusion that no *substantial* violation of defendant's rights occurred is supported by the evidence before it. Furthermore, its findings of fact, which are supported by the evidence as discussed *supra*, support its conclusions of law. Even though the extensive detention of defendant was inexcusable, she was permitted to have a witness when the Intoxilyzer was administered, which she declined. She also personally met with her friend for eight minutes during the crucial period of time subsequent to her arrest. Accordingly, pursuant to our standard of review, we affirm the trial court's order denying defendant's motion to dismiss.

Affirmed.

Judge STROUD concurs.

Judge ELMORE dissents in a separate opinion.

ELMORE, Judge, dissenting.

Because I would reverse the trial court's denial of Linda Daniel's (defendant) motion to dismiss, I respectfully dissent.

Defendant argues to this Court that a lengthy detainment irreparably prejudiced her defense against the charge. I agree, and so would reverse.

Around 8 p.m. on 29 December 2007, Charlotte-Mecklenburg Police Officer A. Holt saw a car driven by defendant swerve outside of the appropriate travel lane multiple times. Officer Holt activated his blue lights to stop defendant's car; she came to a stop in a left turn lane, but began to drive away when the traffic light turned green. Officer Holt "bang[ed]" on the side of the car to get her attention, and

defendant stopped ten to fifteen feet from the original stopping point. Officer Holt observed that defendant was operating the car, that there were no passengers, that there was a strong odor of alcohol, and that defendant had bloodshot eyes and dilated pupils. When asked, defendant denied she had been drinking.

Officer Holt asked defendant to step out of the car and take three field sobriety tests. Defendant held onto the door of the car when she exited the vehicle and stumbled as she stepped out. Defendant subsequently failed the "one legged stand" test, the "walk and turn" test, and the "finger to nose" test, leading Officer Holt to form the opinion that defendant was appreciably impaired by alcohol. Officer Holt placed defendant under arrest for driving while impaired (DWI), driving while license revoked, and transporting an open container. He then transported her to the Mecklenburg County Intake Center.

Meanwhile, two other Charlotte Mecklenburg police officers arrived at the scene to conduct a search of the car. That search produced nine empty or open beer bottles, several bottle caps, and a half-full cup of beer in a cup holder. While the officers were conducting the search, defendant's roommate, Jack Bruce, arrived at the scene seeking to take possession of the car. Officer Donnie Pogue testified that Mr. Bruce gave off an odor of alcohol, but gave him the keys to the car; he testified that the "main concern is to relinquish control [of the car] out of our custody" in case "something happens to the vehicle[.]"

Upon arrival at the Intake Center, defendant was asked to submit to a chemical analysis of her breath via the Intoxilyzer. Defendant consented and waived her statutory right to have either an attorney or witness present. The analysis was conducted at 10:32 p.m., and defendant's Intoxilyzer results showed a blood alcohol concentration of 0.17, more than twice the legal limit of 0.08.

Mr. Bruce arrived at the jail at 12:25 a.m. and was allowed to speak with defendant after she was processed in the magistrate's office. However, for reasons not completely clear in the record, defendant was not allowed to be released into Mr. Bruce's custody. Instead, Mr. Bruce was told to come back the next day; the person with whom he spoke—again not clear in the record—"kept stressing you have [to have] a female to come up here and get her out tonight." Defendant was eventually released into Mr. Bruce's custody at 6:34 p.m. on 30 December 2007, nearly twenty-four hours after her initial traffic stop.

Defendant's motion to dismiss the DWI charge was heard and denied on 18 December 2008. After a trial by jury, defendant was found guilty of DWI on 23 April 2009.

Defendant appeals the trial court's denial of her motion to dismiss the DWI charge, asserting that her lengthy detention violated her statutory rights to the point of irreparably prejudicing any preparation of a defense to the charge. As stated in this Court's ruling in *State v. Knoll* (a consolidation of three similar DWI cases), "[n]o case should be dismissed for the violation of a defendant's statutory rights unless, at the very least, these violations cause irreparable prejudice to the defendant's preparation of his case." *See State v. Knoll*, 84 N.C. App. 228, 231, 352 S.E.2d 463, 465 (1987) (*"Knoll I"*) (citation omitted), *rev'd on other grounds*, 322 N.C. 535, 369 S.E.2d 558 (1988) (*"Knoll II"*). Thus, the first issue is whether defendant's statutory rights were violated.

Defendant's primary argument on this point is that her right to be released when "[a] sober, responsible adult is willing and able to assume responsibility for the defendant until his physical and mental faculties are no longer impaired," N.C. Gen. Stat. § 15A-534.2(c)(2) (2009), was violated by her continued detention after Mr. Bruce arrived at the jail. Defendant argues that she should have been allowed to have been released to Mr. Bruce's custody after her bond was set. Defendant asserts that Mr. Bruce must have already been deemed a "sober, responsible adult" by the Charlotte-Mecklenburg Police when they gave him custody of defendant's car and, as such, there was no legitimate basis for not releasing her into his custody when he arrived at the jail at 12:25 a.m. I agree.

In its oral ruling on the motion to dismiss, the trial court drew the same inference as defendant: namely, that the officer who turned over the keys to Mr. Bruce

> did not form a conclusion that his bodily or mental faculties or both were appreciably impaired from the use of alcohol at that time, or he wouldn't have turned the keys over.
>
> It stands to reason to me that he didn't think he was impaired to the point that he shouldn't be operating a motor vehicle, or he wouldn't have turned those keys over.

The court then recounted the ensuing events of the evening, pausing to question one of the attorneys as to whom Mr. Bruce spoke to once at the jail. After that exchange, the trial court deduced that it was

likely a magistrate who informed Mr. Bruce that a female must return to pick up defendant, and concluded:

> *It appears* that that magistrate determined Mr. Bruce not to be a sober, responsible adult willing to assume responsibility for the defendant. Now, whether or not I agree with that determination, it doesn't matter. I'm not sure that I would have agreed if I had been faced with the same decision when she made that decision. And there is at least some evidence that tends to support that determination.
>
> *For that reason* my conclusion is that the violations, if any, of the defendant's rights under the statute G.S. 15A-534.2 . . . had not been violated so f[l]agrantly at least so as to bear a dismissal of these proceedings.

(Emphasis supplied.)

A trial court's findings of fact will not be disturbed on appeal, so long as they are supported by competent evidence. *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982). However, contrary to the trial court's statement, I can find no evidence in the record to support the determination that Mr. Bruce was not deemed a sober, responsible adult.

Where, as here, the hearing left it unclear as to whether a magistrate had made such a determination, we may look to the record for evidence on the point. *See, e.g., State v. Haas*, 131 N.C. App. 113, 118-19, 505 S.E.2d 311, 314-15 (1998) (examining evidence in the record to determine whether the adult could be considered sober and willing per the statute when trial court declined to do so). The record on appeal tends to show that Mr. Bruce was indeed a sober, responsible adult, and provides little or no evidence to the contrary. As the trial court noted, the officer who dealt with Mr. Bruce at the scene of the arrest, Officer Pogue, testified that Mr. Bruce did smell of alcohol, but that he did not administer any field sobriety tests, and that he released the car into Mr. Bruce's custody. The only other person whose opinion as to Mr. Bruce's condition would be relevant is the unidentified person who spoke with Mr. Bruce through a glass partition, and the most that can be said regarding that person's conclusion is the trial court's statement that "*[i]t appears* that that magistrate determined Mr. Bruce not to be a sober, responsible adult willing to assume responsibility for the defendant." Indeed, the reason explicitly given by the magistrate for not releasing defendant into Mr. Bruce's custody was not his condition but rather his gender.

As such, I cannot agree with the majority that this finding of fact is supported by competent evidence. Per the record, Mr. Bruce met the requirements of N.C. Gen. Stat. § 15A-534.2(c)(2), and when defendant was not released to him, her rights under the statute were violated.

Having concluded that defendant's statutory rights were indeed violated, I turn now to the question of whether defendant has shown that the violation—that is, her prolonged detainment and failure to be released when Mr. Bruce came to the jail—caused her case to be irreparably prejudiced. As we held in *Knoll I*, "denial of access is no longer inherently prejudicial to a defendant's ability to gather evidence in support of his innocence in every driving while impaired case." 84 N.C. App. at 233, 352 S.E.2d at 466. "[A]t the very least, a defendant must show that 'lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost' as a result of the statutory deprivations of which he complains." *Id.*, 84 N.C. App. at 234, 352 S.E.2d at 466 (quoting *State v. Deitz*, 289 N.C. 488, 493, 223 S.E.2d 357, 360 (1976)).

Here, the evidence to which defendant points is Mr. Bruce's observation in the eight minutes he met with her that she had been crying, leaving her eyes red, and that her speech at that time was clear and not slurred. As our Supreme Court concluded regarding the three defendants in *Knoll II*,

[e]ach defendant's confinement in jail indeed came during the crucial period in which he could have gathered evidence in his behalf by having friends and family observe him and form opinions as to his condition following arrest. This opportunity to gather evidence and to prepare a case in his own defense was lost to each defendant as a direct result of a lack of information during processing as to numerous important rights and because of the commitment to jail. The lost opportunities, in all three cases, to secure independent proof of sobriety, and the lost chance, in one of the cases, to secure a second test for blood alcohol content constitute prejudice to the defendants in these cases. That the deprivations occurred through the inadvertence rather than the wrongful purpose of the magistrate renders them no less prejudicial.

*Knoll II*, 322 N.C. at 547-48, 369 S.E.2d at 565 (citation omitted). The same is true in the case at hand, where defendant was detained during the sole period in which she might have obtained evidence helpful to her defense.

I note that, in *Knoll II*, the Supreme Court emphasized the fact that the trial court in each case had found that such evidence was lost as a result of the statutory deprivations, and that no such finding was made by the trial court in the case *sub judice*. *Id.*, 322 N.C. at 543-44, 369 S.E.2d at 563-64. However, as discussed above, the trial court found that no statutory deprivation occurred, and thus did not consider whether any such evidence was lost.

In the three cases considered by *Knoll II*, each defendant was permitted to speak to an attorney, family member, or friend only briefly; and, in the two cases in which those visitors came to the jail, each defendant was inexplicably held for several hours (over six in one case and over eight in the other) *after* the visitors arrived there willing to take custody of the defendant. *Knoll II*, 322 N.C. at 537-42, 369 S.E.2d at 560-63. Here, defendant was permitted to speak to Mr. Bruce for approximately eight minutes and was held for over eighteen hours after he arrived at the jail willing to take custody of her. As such, pursuant to *Knoll II*, I would reverse the trial court's ruling and hold that the motion to dismiss should have been granted.